### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ADT, LLC, et al, | |
| Plaintiffs, | CASE No. 20-cv-23918- AMC |
| v. | |
| SAFEHOME SECURITY, INC., et al., | |
| Defendants. | |
| SAFEHOME SECURITY, INC., et al., | |
| Counterclaim-Plaintiffs, | |
| v. | |
| ADT, LLC, et al, | |
| Counterclaim-Defendants. | |

### ANSWER AND AFFIRMATIVE DEFENSES TO THE SECOND AMENDED COMPLAINT <u>AND COUNTERCLAIMS</u>

Defendants Safe Home Security, Inc. ("Safe Home"); and Security Systems, Inc. ("SSI") (Safe Home and SSI together, "Defendants") by and through undersigned counsel Answer the Second Amended Complaint and assert Affirmative Defenses and Counterclaims as follows:

### SUMMARY OF THE CASE

1.      This case is about each of the Defendants' practice of using false and misleading sales practices to target ADT customers across the country during unannounced door-to-door sales visits to ADT customers' homes.

**Safe Home Security Inc. Answer**:  Admits only that Plaintiffs purport to bring a case about false and misleading sales practices and denies all other allegations and Plaintiffs' entitlement to relief.

**Security Systems Inc. Answer**: Admits only that Plaintiffs purport to bring a case about false and misleading sales practices and denies all other allegations and Plaintiffs' entitlement to relief.

2.      In a calculated attempt to convert ADT customers to Defendants' customers without their knowledge, each Defendant's sales representatives, through well-rehearsed deceptive tactics, have misled masses of ADT customers to believe their receptive employer is affiliated with ADT. These willful affiliation misrepresentations lead ADT's customers to do business with these Defendants under false pretenses, often leaving ADT customers unwittingly bound to multi-year contracts with these entities. Even for ADT customers that learn the true nature of Defendants' scam, it is often too little, too late. By ensuring their contracts are next to impossible to cancel, Defendants have successfully trapped ADT customers in multi-year contracts worth thousands of dollars.

**Safe Home Security Inc. Answer**:  Denied.

**Security Systems Inc. Answer**: Denied.

3.      Each Defendant accomplishes this scam by freeriding on the goodwill of ADT, convincing ADT customers, among other things: (1) that the Defendant's sales agent is there to simply "update" or "upgrade" the ADT customer's equipment, when in reality he or she is switching out the ADT system for that of the respective Defendant; (2) that ADT has been bought out or is going out of business and that the Defendant is taking over ADT accounts; and

2

(3) that the Defendant is a subcontractor, installer or is otherwise affiliated with or acting on behalf of ADT. These (and other) routinely-used acts of deception allow Defendants to successfully take advantage of ADT's goodwill and steal ADT's customers under false pretense, all the while damaging the goodwill underlying the "ADT" brand name. Indeed, the Defendants' scheme leads some customers to ultimately cancel ADT's services, and others to become so frustrated with ADT because of Defendants' practices that the customer stops paying for any alarm system at all.

**Safe Home Security Inc**. **Answer**: Denied.

**Security Systems Inc**. **Answer**: Denied.

4.      Not only do these willfully deceptive tactics rob ADT of its customers and damage ADT's name – they violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and the related common law of unfair competition. ADT thus seeks compensatory damages to remedy the Defendants' conduct, including: (1) its loss of numerous customers, both known and unknown, and the disruption of thousands of others since each individual Defendant's deceptive practices began; (2) ADT's injuries to its goodwill and reputation; (3) ADT's lost royalties from Defendants' unauthorized use of the ADT brand; (4) each Defendant's profits from its respective ill-gotten gains; (5) ADT's attorneys' fees; and (6) punitive damages to punish and deter each Defendant from continuing to engage in its intentionally false and misleading conduct.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

5.      There is no indication the Defendants intend to stop their deceptive sales

practices, and ADT anticipates by the time of trial the volume of reports about deceptive sales practices by the Defendants will be even more numerous. To be sure, the number of reported incidents of deceptive sales practices is only the tip of the iceberg of ADT customers each Defendant has deceived. For every report of a deceptive sales incident, many more go unreported.

**Safe Home Security Inc. Answer**: Denied.

**Security Systems Inc. Answer**: Denied.

6.      ADT has been fighting this problem for many years. Defendants' conduct not only  irreparably harms ADT and its customers, it inflicts damage on the entire home security system industry. Home alarm providers like ADT make their keep by instilling a sense of security and trust in their customers. Defendants' scamming and deceptive conduct ruins that effort, instilling in the consuming public distrust for home alarm providers.

**Safe Home Security Inc. Answer**: Defendant denies all allegations directed at Safe Home and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at Safe Home.

**Security Systems Inc. Answer**: Defendant denies all allegations directed at SSI and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at SSI.

### THE PARTIES

7.      Plaintiff The ADT Security Corporation, is a Delaware corporation with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431. The ADT Security Corporation is a holding company that owns, *inter alia*, all ADT trademarks, including

4

without limitation 21 ADT live word trademarks featuring the letters "A – D – T," registered in the United States Patent & Trademark Office that bear the registration numbers 3251836, 3352491, 710708, 710507, 3515266, 3511263, 3445423, 3909665, 3485321, 3421797, 1034716, 838956, 803247, 846966, 3348663, 3253804, 3445420, 3991449, 3335239, 3335298, and 3427081 ("ADT Trademarks"). The ADT Security Corporation is ultimately wholly owned by ADT Inc., a Delaware corporation whose common stock is traded on the New York Stock Exchange.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations and demands strict proof of same.

**Security Systems Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations and demands strict proof of same.

8.      Plaintiff ADT LLC is a Delaware limited liability company with its principal place  of business at 1501 Yamato Road, Boca Raton, Florida 33431. ADT LLC is an operating company that conducts the ADT alarm services business in the United States. ADT LLC uses the ADT Trademarks under license from The ADT Security Corporation. ADT LLC is owned by The ADT Security Corporation.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations and demands strict proof of same.

**Security Systems Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations and demands strict proof of same.

9.      Defendant Safe Home Security, Inc. is a Connecticut corporation with its

principal place of business located at 1125 Middle Street #201, Middletown, Connecticut 06457. Safe Home was incorporated in 1988. Safe Home's registered agent for service of process in Connecticut is Incorp Services, Inc. 6 Landmark Square, 4th Floor, Stamford, CT 06901. Safe Home's registered agent for service of process in Florida is InCorp. Services, Inc., 17888 67th Court North, Loxahatchee, FL 33470.

**Safe Home Security Inc. Answer:** Admitted.

**Security Systems Inc. Answer:** This allegation is not directed at SSI and so no answer is required.  In the event an answer is deemed required, SSI denies knowledge or information sufficient to form a belief as to the truth of the allegations.

10.     Alliance Security, Inc. ("Alliance") is also a residential alarm monitoring company that has targeted ADT customers through door-to-door sales that utilize the same types of deceptive sales tactics as Safe Home and Safeguard. Alliance is a Delaware corporation with its principal place of business located at 33 Broad Street, Providence, Rhode Island 02903.

**Safe Home Security Inc. Answer**:  Defendant denies the allegations directed at Safe Home and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

**Security Systems Inc. Answer**: Defendant denies the allegations directed at SSI and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

11.     On July 14, 2017, Alliance filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Rhode Island, Case No. 1:17-bk-11190. On May 24, 2019, the Bankruptcy Court approved a June 30, 2019 sale of substantially all of Alliance's assets to Defendant Safe Home, including—on information and belief—all of

Alliance's customer accounts obtained from ADT through deceptive sales practices. Accordingly, Safe Home is Alliance's successor-in-interest and is liable for Alliance's tortious actions directed at ADT and its customers.

**Safe Home Security Inc. Answer:**  Safe Home denies that it is Alliance's successor-in-interest and denies that it is liable for Alliance's tortious actions directed at ADT and ADT's customers. Safe Home denies that it acquired customer accounts from obtained from ADT through deceptive sales practices.  With respect to the remaining allegations, Safe Home asserts that these are legal conclusions which should be referred to the court and for which no response is required. To the extent a response is required, Safe Home asserts that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

**Security Systems Inc. Answer:** This allegation is not directed at SSI and so no answer is required.  In the event an answer is deemed required, SSI denies knowledge or information sufficient to form a belief as to the truth of the allegations.

12.	Defendant Security Systems, Inc. d/b/a Safeguard America ("Safeguard") is a Connecticut corporation with its principal place of business located at 1125 Middle Street #201, Middletown, Connecticut 06457. Safeguard was incorporated in 1992. Safeguard's registered agent for service of process in Connecticut is Incorp Services, Inc. 6 Landmark Square, 4th Floor, Stamford, CT 06901. Safeguard's registered agent for service of process in Florida is InCorp. Services, Inc., 17888 67th Court North, Loxahatchee, FL 33470.

**Safe Home Security Inc. Answer:** This allegation is not directed at Safe Home and so no answer is required.  In the event an answer is deemed required, Safe Home denies knowledge or information sufficient to form a belief as to the truth of the allegations.

**Security Systems Inc. Answer:** Admitted.

## JURISDICTION AND VENUE

13.      This Court has jurisdiction over this action pursuant to Section 1331 of Title

28 because it presents a federal question under Section 43 of the Lanham Act.

**Safe Home Security Inc. Answer:** Safe Home asserts that these are legal conclusions which

should be referred to the court and for which no response is required.  To the extent a response is

  required, Safe Home asserts that it lacks knowledge or information sufficient to form a belief as

  to the truth of the allegations.

**Security Systems Inc. Answer:** SSI asserts that these are legal conclusions which should be

referred to the court and for which no response is required.  To the extent a response is required,

SSI asserts that it lacks knowledge or information sufficient to form a belief as to the truth of the

allegations.

14.      This Court has supplemental jurisdiction over the state-law claims also

asserted in this action pursuant to Section 1367(a) of Title 28.

**Safe Home Security Inc. Answer:** Safe Home asserts that these are legal conclusions which

should be referred to the court and for which no response is required.  To the extent a response is

required, Safe Home asserts that it lacks knowledge or information sufficient to form a belief as

to the truth of the allegations.

**Security Systems Inc. Answer:** SSI asserts that these are legal conclusions which should be

referred to the court and for which no response is required.  To the extent a response is required,

SSI asserts that it lacks knowledge or information sufficient to form a belief as to the truth of the

allegations.

15.     Venue lies in this District pursuant to Section 1391(b) of Title 28 because events giving rise to the claims asserted in this Complaint occurred in this District and because each of the Defendants are subject to the Court's personal jurisdiction in this District for committing tortious conduct purposefully directed at this District, as described in this Complaint.

**Safe Home Security Inc. Answer:** Safe Home denies the allegations against it and with regard to the remaining allegations, asserts that these are legal conclusions which should be referred to the court and for which no response is required.  To the extent a response is required, Safe Home asserts that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

**Security Systems Inc. Answer:** SSI denies the allegations against it and with regard to the remaining allegations, asserts that these are legal conclusions which should be referred to the court and for which no response is required.  To the extent a response is required, SSI asserts that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

## GENERAL ALLEGATIONS

### ADT and the Defendants Compete in the Home Security System, Automation, and Smart Home Markets

16.     ADT, founded in 1874, is the oldest, largest, and best-known provider of electronic security, automation and smart home services and equipment for homes and businesses in the United States.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of all allegations in Paragraph 16 except the allegation that ADT is the best-known provider, which Defendant denies.

**Security Systems Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of all allegations in Paragraph 16 except the allegation that ADT is the best-known provider, which Defendant denies.

17.     ADT provides security, automation, and smart-home services and equipment nationwide and is engaged in interstate commerce for the purposes of the Lanham Act.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations and refers legal conclusions to the court for adjudication.

**Security Systems Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations and refers legal conclusions to the court for adjudication.

18.     ADT's name and trademarks are registered with the United States Patent and Trademark Office.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations and demands strict proof of same.

**Security Systems Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations and demands strict proof of same.

19.     As a Florida resident, ADT is injured in Florida by the tortious activities of each of the Defendants.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

20.     Defendant Safe Home's reach is nationwide, operating in most states, including Florida. Safe Home is registered to do business in Florida with the Florida Department of State,

Division of Corporations.

**Safe Home Security Inc. Answer:** Admitted.

**Security Systems Inc. Answer:** This allegation is not directed at SSI and so no answer is required.  In the event an answer is deemed required, SSI denies knowledge or information sufficient to form a belief as to the truth of the allegations.

21.     Alliance, Anthem, and Safeguard each operate in various states across the country, including Florida.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations.

**Security Systems Inc. Answer:** SSI denies knowledge or information sufficient to form a belief as to Alliance and Anthem, but admits only that SSI has customers in various states, including Florida.

22.     A substantial fraction of the violations that form the basis of this complaint occurred in Florida. At all times relevant to this Complaint, each Defendant misled Florida consumers and     engaged in the deceptive sales practices that are the subject of this civil action.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

23.     Defendants and ADT are direct competitors in the security systems, automation, and smart home markets. ADT and the Defendants market and sell substantially similar goods made by the same suppliers through the same channels to the same target markets of residential consumers. The companies also provide substantially similar security monitoring services to their respective customers. ADT operates in each of the states in which the Defendants sell and install alarm systems.

**Safe Home Security Inc. Answer:**  Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations.

**Security Systems Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations.

### Defendants' Deceptive Sales Practices

24.     Each Defendant's respective sales agents target ADT customers in various yet near- identical ways, often by seeking houses with the distinctive ADT yard sign and/or window stickers that ADT's customers post on their premises to deter burglars and trespassers. In addition, these yard signs and window stickers communicate to competitors, such as the Defendants, that the homeowner has an existing business relationship with ADT.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

25.     The complaints received by ADT show that the Defendants' sales agents many times intentionally target ADT customers that are over the age of 65, are infirm, or have diminished mental capacities.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

26.     The Defendants' sales agents generally solicit ADT's customers in unannounced "cold" door-to-door sales visits to the customers' homes. At the beginning of these visits, and often throughout the sales encounter, the agents use deceptive sales pitches that are intended to mislead (and that do mislead) ADT's customers into believing that the individual Defendant represents ADT, is affiliated with ADT, that the Defendant's sales agent is visiting ADT's customer at ADT's direction, that Defendant's sales agent works for the

companies that made the ADT alarm equipment installed in the customers' homes, or that ADT has otherwise blessed the Defendant to work on ADT's behalf.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

27.     Despite knowing that these statements are false, each Defendant's sales agents use these pitches to induce ADT customers to believe that they have an existing business relationship with the agents, to trust them, and to grant the agents entry into their homes. Once inside, having won the customers' trust by this deception, the agents lead the customers to sign the respective Defendant's sales contracts and install the respective Defendant's alarm systems in the often mistaken belief that they are receiving new ADT equipment from ADT, an ADT affiliate, an ADT successor, that the Defendant has or is assuming the ADT customer's account, or that the customer has no choice but to permit the transaction to go forward if he or she wishes to continue to have operational alarm-monitoring services.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

28.     In reality, neither Defendants nor their sales agents are affiliated with ADT in any way. Nor have any of the Defendants legitimately assumed any ADT customer accounts or succeeded ADT in the home security monitoring market. Accordingly, the statements made by the Defendants' respective sales agents in order to gain entry into the homes of ADT's customers and convince them to allow the sales agent to replace ADT equipment and/or the underlying alarm monitoring services are false and misleading.

**Safe Home Security Inc. Answer:** Defendant admits only that it is not affiliated with ADT and denies that it has sales agents and denies the remaining allegations.

13

**Security Systems Inc. Answer:** Defendant admits only that it is not affiliated with ADT and denies that it has sales agents and denies the remaining allegations.

29.     Having heard the Defendant's untrue claims of affiliation with ADT, ADT's customers allow these sales agents into their homes in the mistaken belief that they are speaking with a person somehow affiliated with ADT, visiting to provide the customers with goods and services that are related to their existing ADT alarm system. ADT's customers repeatedly confirm that but for this initial confusion, they would never have allowed any of the Defendants' sales agents into their homes or to otherwise inspect, manipulate, or replace the equipment previously installed by ADT.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

30.     The alarm monitoring services provided by ADT and subscribed to by ADT's customers require the use of equipment compatible with ADT's services. Accordingly, once the Defendants remove ADT's equipment from customer homes, ADT is typically no longer able to provide the services its customers have contracted for.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

31.     As a result, a number of ADT customers have unwittingly found themselves with Defendants' alarm systems installed in their homes, and with simultaneous contractual obligations to both ADT and the Defendant who deceived them into entering into a contract under false pretenses.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

14

32.     In other instances, the customers retained Defendants' systems and terminated their ADT contracts, often because the respective Defendant makes it too cumbersome and time- consuming for the customer to end the Defendant's service, despite it being consummated through deceptive means. In some circumstances, each of the Defendants will require their dishonestly obtained customers to pay substantial contract-termination fees without consideration that the customer's contract was acquired through false and deceptive means.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

33.     As highlighted above, such deceptive sales practices and claims of affiliation with ADT are typical of the hundreds of complaints ADT has received from its customers about the Defendants and their deceptive sales practices.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

34.     Indeed, ADT has already uncovered numerous instances of each Defendant engaging in these types of deceptive sales practices. For example, on January 17, 2020, a Safe Home sales agent visited ADT customer P. Franklin's home in Orlando, Florida. The sales agent told Ms. Franklin that Safe Home was a part of ADT and that he was there to perform a necessary upgrade to her ADT system. A technician accompanying the Safe Home sales agent removed ADT's equipment and installed Safe Home equipment while the sales agent had Ms. Franklin fill out paperwork on an iPad ostensibly related to the "upgrade."

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Defendant denies all allegations directed at SSI and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at SSI.

35.     Upon further investigation, Ms. Franklin realized she had been deceived and that the individuals who had visited her home were not, in fact, related to or affiliated with ADT at all, nor did her equipment require any upgrades whatsoever. She then called ADT's customer care center to report the deceptive sale, and ADT subsequently sent out a technician to reinstall the ADT equipment Safe Home had removed so that Ms. Franklin could continue to receive alarm monitoring from ADT.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to Ms. Franklin's state of mind and denies the remaining allegations.

**Security Systems Inc. Answer:** Defendant denies all allegations directed at SSI and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at SSI.

36.     Nor are Safe Home's deceptive sales practices limited to Florida. On January 7, 2020, a Safe Home sales agent visited the home of ADT customer F. Ferrell in Bogalusa, Louisiana. Mr. Ferrell is a 74-year old man suffering from partial paralysis. He was preparing for surgery when a Safe Home sales agent knocked on his door. Mr. Ferrell informed the sales agent that he was in great pain and was preparing for surgery, but the sales agent insisted on entering Mr. Ferrell's home, telling him that ADT had sent the sales agent to inspect ADT's equipment and arrange for an upgrade. ADT did no such thing.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to Mr. Ferrell's condition and intentions and denies the remaining allegations.

16

**Security Systems Inc. Answer:** Defendant denies all allegations directed at SSI and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at SSI.

37.     During this interaction, Mr. Ferrell made it clear to the sales agent that he already had a contract with ADT. In order to avoid being confronted with his false claims of affiliation with ADT, the Safe Home sales agent stated that the upgrade would merely "extend" Mr. Ferrell's contract with ADT and not to worry. He then instructed Mr. Ferrell to sign what Mr. Ferrell believed was paperwork documenting the upgrade. In reality, this paperwork was a new contract with Safe Home unrelated to the services provided by ADT.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to Mr. Ferrell's condition and intentions and denies the remaining allegations.

**Security Systems Inc. Answer:** Defendant denies all allegations directed at SSI and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at SSI.

38.     On January 10, 2020, Safe Home sent a technician to Mr. Ferrell's home to remove the ADT equipment installed in his home and replace it with Safe Home equipment. ADT received a notification that its installed equipment had been disconnected and promptly called Mr. Ferrell to determine the cause of the alarm-monitoring interruption. During this call, ADT informed Mr. Ferrell that it had not sent anyone to his home to upgrade or otherwise inspect his equipment and that the Safe Home sales agent was not in any way related to or affiliated with ADT. Upon Mr. Ferrell's request, ADT subsequently sent out a technician to reinstall the ADT equipment that Safe Home had removed.

**Safe Home Security Inc. Answer:** Safe Home denies the allegations against and denies

17

knowledge or information sufficient to form a belief as to the truth of the allegations regarding ADT's communications.

**Security Systems Inc. Answer:** Defendant denies all allegations directed at SSI and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at SSI.

39.     On November 18, 2019, Safe Home sent sales agent Joshua Curtis to the home of B. Brown. Curtis told Ms. Brown that ADT was going out of business, Safe Home was taking over its accounts in the area, and Ms. Brown would need to sign an agreement to have new equipment installed in her home in order to continue receiving alarm-monitoring service. Ms. Brown signed this document, and Safe Home removed ADT's equipment and installed its own.

**Safe Home Security Inc. Answer:** Safe Home denies knowledge or information sufficient to form a belief as to what Ms. Brown signed and whether equipment was removed and Safe Home denies the remaining allegations.

**Security Systems Inc. Answer:** Defendant denies all allegations directed at SSI and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at SSI.

40.     On November 15, 2019, Safe Home sent a sales agent to the home of ADT customers K. and M. Meissner. The sales agent told M. Meissner that ADT was going out of business in the area and Safe Home was taking over all of ADT's accounts. The sales agent further told the Meissners not to contact ADT, as Safe Home would handle transitioning the services over as needed, further explaining that the Meissners would need to sign paperwork to authorize the installation of equipment "necessary" for the Meissners to continue receiving alarm-monitoring service. Contrary to the representations made by the sales agent, the

document signed by the Meissners was actually a contract for services with Safe Home.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Defendant denies all allegations directed at SSI and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at SSI.

41.      A Safe Home technician accompanying the sales agent removed ADT's equipment, installed Safe Home's equipment, and took the removed ADT equipment with him. While the Meissners have stated they would like to remain ADT customers, they are unable to given the contract the Safe Home sales agent deceived them into signing.

**Safe Home Security Inc. Answer:** Safe Home denies knowledge or information sufficient to form a belief as to the truth of the allegations.

**Security Systems Inc. Answer:** Defendant denies all allegations directed at SSI and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at SSI.

42.      Similarly, on February 2, 2019, Safe Home sent a sales agent to the home of ADT customer M. Powell. As with the Ms. Brown, the Meissners, and others, the sales agent told Mr. Powell that ADT had gone out of business and Safe Home was taking over all of ADT's accounts in the area, convinced him to sign a contract with Safe Home under false pretenses, removed ADT's equipment, and installed Safe Home's equipment.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Defendant denies all allegations directed at SSI and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at SSI.

43.     Safeguard employs the same approach to its deceptive sales tactics, convincing ADT's customers that ADT already has or is currently going out of business and that Safeguard is taking over all of ADT's accounts in the area.

**Safe Home Security Inc. Answer:** Defendant denies all allegations directed at Safe Home and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at Safe Home.

**Security Systems Inc. Answer:** Denied.

44.     This is what happened to ADT customer D. Brown, among others. On April 8, 2019, a Safeguard sales agent visited Ms. Brown's home in Plant City, Florida. The sales agent told Ms. Brown that ADT was no longer servicing the area and that he would upgrade her system with a medical alert. A technician subsequently replaced the ADT-installed equipment, rendering ADT unable to provide the alarm monitoring services contracted for by Ms. Brown. Ms. Brown did not discover Safeguard's deception until the equipment installed by Safeguard began to malfunction, leading her to call ADT's customer care department.

**Safe Home Security Inc. Answer:** Defendant denies all allegations directed at Safe Home and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at Safe Home.

**Security Systems Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to what and whether equipment was replaced or whether ADT was rendered unable to provide services.  Defendant denies all remaining allegations.

45.     Similarly, on March 13, 2019, Safeguard sent sales agent John Alex and several technicians to the home of ADT customer E. Murray. These Safeguard employees told Ms. Murray that ADT was going out of business and that she would need to sign a new agreement

with Safeguard in order to continue to receive alarm-monitoring services. As a result of this deception, Ms. Murray agreed to allow Safeguard to remove the ADT equipment from Ms. Murray's home and install its own.

**Safe Home Security Inc. Answer:** Defendant denies all allegations directed at Safe Home and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at Safe Home.

**Security Systems Inc. Answer:**  Denied.

46.       Safeguard's sale agents also make the same false claims of current affiliation with ADT as the other Defendants. On August 7, 2019, a Safeguard sales agent knocked on the door of ADT customer D. Edwards, claiming that he had been sent by ADT to perform maintenance on Mr. Edwards' ADT alarm equipment and provide him with an upgrade. Sensing that ADT would not send a technician out to his home to perform such maintenance without first setting up an appointment, Mr. Edwards refused to let the sales agent into his home without first confirming the need for any such upgrade.

**Safe Home Security Inc. Answer:** Defendant denies all allegations directed at Safe Home and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at Safe Home.

**Security Systems Inc. Answer:** Denied.

47.       Despite the prevalence of such misleading sales practices among the Defendants' door-to-door sales teams, their deceptive and infringing conduct is not limited to in-person sales.

**Safe Home Security Inc. Answer:**  Denied.

**Security Systems Inc. Answer:** Denied.

48.      For example, in early October 2019, an Alliance sales agent called ADT customer M. Gallo, stating that she was with her current alarm services provider and had been instructed to offer her a better monthly rate due to her tenure with ADT. The sales agent then scheduled an appointment for October 15, 2019 in order to install upgraded equipment.

**Safe Home Security Inc. Answer:**  Safe Home denies that it is Alliance's successor-in-interest and denies that it is liable for Alliance's tortious actions.  Safe Home denies that it acquired customer accounts obtained from ADT through deceptive sales practices.  Safe Home denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48.

**Security Systems Inc. Answer:** Defendant denies all allegations directed at SSI and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at SSI.

49.      In order to disguise her deceptive sales practices, the Alliance sales agent told Ms. Gallo that Alliance had purchased ADT and that she should not be alarmed when she received future invoices on Alliance letterhead. Contrary to these misrepresentations, Alliance had not purchased ADT, nor had ADT instructed an Alliance sales agent to call Ms. Gallo and offer her a different contract rate or new equipment.

**Safe Home Security Inc. Answer:** Safe Home denies that it is Alliance's successor-in-interest and denies that it is liable for Alliance's tortious actions.  Safe Home denies that it acquired customer accounts obtained from ADT through deceptive sales practices.  Safe Home denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49.

**Security Systems Inc. Answer:** Defendant denies all allegations directed at SSI and denies

knowledge or information sufficient to form a belief as to the truth of the allegations not directed at SSI.

50. On October 15, 2019, Alliance technician Dwight Hammothe removed ADT's equipment and installed Alliance's own equipment. Ms. Gallo did not realize that she had been duped until her attempts at calling the customer service numbers provided by Alliance failed, leading her to call the ADT customer care center directly. ADT's customer care team informed Ms. Gallo that ADT had neither been purchased by Alliance nor had a customer service representative call to offer her a new plan or equipment. Accordingly, Ms. Gallo requested that ADT reinstall the equipment removed by Alliance in order to reinstate her alarm monitoring service with ADT.

**Safe Home Security Inc. Answer:** Safe Home denies that it is Alliance's successor-in-interest and denies that it is liable for Alliance's tortious actions.  Safe Home denies that it acquired customer accounts obtained from ADT through deceptive sales practices.  Safe Home denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50.

**Security Systems Inc. Answer:** Defendant denies all allegations directed at SSI and denies knowledge or information sufficient to form a belief as to the truth of the allegations not directed at SSI.

51. The above anecdotes are by no means all of the reports of deceptive sales practices received by ADT. To date, ADT has itself collected hundreds of customer complaints regarding the sales practices of the Defendants. And as a result of nearly every such complaint, ADT is left to spend its own capital correcting and otherwise repairing the damage done by the Defendants' conduct.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

52.     Nor do the customer complaints received by ADT represent the full scope of Defendants' illegal conduct. Even a cursory review of the various enforcement actions brought by state attorneys general against Safe Home reveals a massive number of deceptive sales targeting ADT's customer base, the vast majority of which ADT was previously unaware of.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

53.     Accordingly, ADT's investigation into the Defendants' deceptive sales practices remains ongoing.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations.

**Security Systems Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations.

**ADT Has Incurred Significant Damages Resulting from Defendants' Conduct**

*Costs Incurred Repairing and/or Mitigating the Effects of Defendants' Deception*

54.     Defendants' deceptive sales tactics irreparably injure ADT's relationships with its existing customers. As a result of each Defendant's manipulation, ADT's customers allow the Defendant's sales agents entry to their homes under false pretenses, sign the Defendant's contracts, uninstall their ADT alarm systems, replace these systems with the Defendant's own equipment— or in the case of Anthem, Safe Home's equipment—and terminate their ADT contracts.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

55.     Even where ADT's customers subsequently recognize the scam perpetrated by the Defendants' respective sales agents, ADT has no option but to send technicians to the deceived customers' houses to reinstall, or even replace, the removed ADT equipment at considerable expense to ADT. Each Defendant is liable to ADT for these costs and damages caused by their individual company's conduct.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

56.     The constant need to assist ADT customers in fixing problems resulting from each Defendant's deceptive sales conduct imposes a substantial cost on ADT to maintain and train customer service agents appropriately. In effect, ADT is forced to constantly police each of the Defendant's salespeople. The Defendants are also liable for these costs and damages.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

*Injury to ADT's Goodwill and Reputation*

57.     The Defendants' deceptive sales tactics also injure ADT's goodwill and reputation.  Depending on which false story each Defendant communicated to any given customer, ADT's customers are left with the false belief that ADT is out of business, that ADT has been acquired, that their ADT alarm systems are outdated and vulnerable to burglars, or that the individual Defendant has taken over ADT accounts. Others mistakenly believe that the Defendant inappropriately gained access to the private data the customers had entrusted to ADT, leaving them to question ADT's ability to safeguard their interests, a critical shortcoming given the necessity of trust between any alarm services provider and its customers.

**Safe Home Security Inc. Answer:** Denied.

25

**Security Systems Inc. Answer:** Denied.

58.     In a broader sense, each Defendant's actions damage ADT's goodwill and reputation as a reliable provider of security, automation and smart home services. Each Defendant's targeting of ADT customers has led some to cease all services with ADT as a result of falling victim to these types of false and misleading practices. Some wrongly blame ADT for the Defendants' conduct and never come to understand the lack of affiliation between the Defendant that deceived them and ADT.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

59.     Even where ADT customers understand the Defendants' scams for what they are, ADT's goodwill and reputation is harmed, as such customers may reconsider their ADT service because ADT is a target of scammers.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

60.     Customers often blame themselves for falling victim to the Defendants' false and misleading sales tactics. Such self-blame not only contributes to an under-reporting of deceptive sales conduct, but irreparably harms ADT's goodwill and reputation because customers believe they never would have fallen victim if they did not have an ADT system in their home in the first place.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

### *Misappropriation of ADT's Authorized Dealer Licensing*

61.     By falsely claiming an affiliation with ADT in their sales to consumers, each of the Defendants further injures ADT by taking for itself the essential benefit of being an ADT

affiliate without paying any royalty or other consideration to ADT for the claim of affiliation.

This is a benefit for which hundreds of *licensed* ADT dealers pay substantial financial

consideration to ADT. Each of the Defendants pays nothing to use ADT's name and brand for

its own benefit, despite others in this marketplace paying substantial sums for the rights

provided through an official licensing relationship with ADT. Moreover, the Defendants do not

abide by ADT's dealer guidelines and so misappropriate a right of affiliation with ADT.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

### *Each Defendant's Deceptive Conduct Is Knowing and Intentional*

62.      Such practices violate statutory and common-law prohibitions against the use

of false and deceptive statements in commerce. They also violate the security systems

industry's own Code of Ethics and Standards of Conduct, which requires that companies

"truthfully and clearly identify themselves by name . . . at the initiation of a sales presentation,

without request from the consumer," and which prohibits as common deceptive sales practices,

*inter alia*, (a) any claim that  a competitor is going out of business, (b) any claim that the

company is taking over the competitor's accounts, or (c) any offer of an "update" or "upgrade"

of an existing system that requires the execution of a contract with a new security services

provider.

**Safe Home Security Inc. Answer:** Defendant denies the allegations against it and denies

knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

**Security Systems Inc. Answer:** Defendant denies the allegations against it and denies

knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

63.      Each of the Defendants knows these types of sales practices are contrary to the

law and established industry standards, yet knowingly continues such conduct. None of the

Defendants have taken appropriate action to curb such conduct by their respective sales agents.

**Safe Home Security Inc. Answer:**  Defendant denies that it has sales agents that engage in deceptive conduct and denies the remaining allegations against it.

**Security Systems Inc. Answer:** Defendant denies that it has sales agents that engage in deceptive conduct and denies the remaining allegations against it.

64.     Each Defendant's conduct is knowing and intentional. At best, each Defendant is aware of such conduct by its sales agents but does not take sufficient actions to stop them despite having the ability to do so. At worst, each Defendant knowingly teaches and condones these actions by its sales agents.

**Safe Home Security Inc. Answer:** Defendant denies that it has sales agents that engage in deceptive conduct and denies the remaining allegations against it.

**Security Systems Inc. Answer:** Defendant denies that it has sales agents that engage in deceptive conduct and denies the remaining allegations against it.

65.     Moreover, each Defendant's conduct is geographically widespread and numerically voluminous, especially considering that many deceptive sales encounters never get reported to ADT.

**Safe Home Security Inc. Answer:**  Denied.

**Security Systems Inc. Answer:** Denied.

66.     ADT has received reports of deceptive sales practices in most states in which each Defendant sells alarm systems. Many of the reported incidents occurred in the state of Florida.

**Safe Home Security Inc. Answer:** Defendant denies the allegations against it and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

**Security Systems Inc. Answer:** Defendant denies the allegations against it and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

67.     The numerous reports ADT has received thus far are but the tip of the iceberg. It is an accepted (and obvious) tenet of consumer complaint behavior that for every aggrieved customer who reports a deceptive sales practice, many more go uncounted. The complaints that ADT received over the period discussed above are likely indicative of thousands of other occurrences where the customer either does not take the time to complain or never realizes he or she has been duped.

**Safe Home Security Inc. Answer:** Defendant denies the allegations against it and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

**Security Systems Inc. Answer:** Defendant denies the allegations against it and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

68.     Upon information and belief, each Defendant's own internal records will show how widespread and pervasive its deceptive sales practices are. Many ADT customers subjected to the Defendants' deceptive sales practices will never complain to ADT. Rather, upon learning of the deceptive conduct the respective Defendant subjected them to, they will complain to that Defendant. ADT would therefore not have records of such conduct. Nevertheless, on information and belief, each of the Defendants will have exclusive possession and control of such records demonstrating their respective deceptive sales tactics.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

69.     Defendants' conduct has not stopped, and will not stop, because each Defendant generates significant profits from its deceptive tactics. Every alarm account the

Defendant acquires through deceptive sales conduct creates a new revenue stream for that Defendant, potentially for several years beyond the initial term of the new contract. Thus, the Defendants deceptive practices are designed to obtain as many accounts as possible through whatever means possible. On information and belief, such conduct has permitted each Defendant to bolster their financial reports and receive new credit and/or equity investments that otherwise might not be possible without the illegal sales conduct.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

### COUNT I - UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)(A) [FALSE AFFILIATION] (All Defendants)

70.     ADT incorporates paragraphs 1 through 69 as if set forth fully herein.

**Safe Home Security Inc. Answer:** Defendant repeats, realleges and incorporates by reference each and every response to the allegations contained in Paragraphs 1 through 69 as if fully set forth herein.

**Security Systems Inc. Answer:** Defendant repeats, realleges and incorporates by reference each and every response to the allegations contained in Paragraphs 1 through 69 as if fully set forth herein.

71.     The ADT Security Corporation owns the ADT Trademarks. ADT LLC uses the ADT Trademarks under license from The ADT Security Corporation. Both are injured by any effort by each respective Defendant to confuse ADT's customers as to the affiliations of that Defendant's sales agents with ADT.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to whether Plaintiffs own, use, and license the trademarks.  Defendant denies the

allegations against it.

**Security Systems Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to whether Plaintiffs own, use, and license the trademarks.  Defendant denies the allegations against it.

72.      Each Defendant's sales agents use false representations of affiliation with ADT to confuse ADT's customers as to the agents' true affiliation, to interest the customers in their pitches, to win the customers' trust, and to gain access to their homes.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

73.      In fact, each Defendant's sales agents do not represent ADT, nor are any of the Defendants affiliated in any manner with ADT.

**Safe Home Security Inc. Answer:** Defendant denies that it has sales agents, admits that Safe Home is not affiliated with ADT, and denies all remaining allegations against it.

**Security Systems Inc. Answer:** Defendant denies that it has sales agents, admits that SSI is not affiliated with ADT, and denies all remaining allegations against it.

74.      Each Defendant's sales agents make these false representations to ADT's customers with the intent of deceiving ADT's customers as to a relationship or affiliation with ADT that does not exist, and that has never existed.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

75.      These false and misleading statements are likely to confuse consumers regarding the Defendant's apparent (but false) affiliation with ADT in the initial stages of a

sale.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

76.     Some ADT customers, initially confused at their doorsteps, eventually realize by the end of the sale that the sales agents represent the Defendant, not ADT. But many do not, and remain confused at the point of sale and sign contracts with the Defendant in the mistaken belief that they are contracting with ADT or one of its affiliates. Even when the customer is initially confused but later comes to understand the sales agent is not affiliated with ADT, ADT is still damaged by the Defendant's freeriding on ADT's name and brand recognition.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

77.     ADT has been and will continue to be damaged as a result of each Defendant's false representations by the confusion of the market for ADT's goods and services, by the disruption of ADT's relationships with its customers, by the diversion of ADT's customers to the Defendant, by ADT's lost royalties, by ADT's loss of control of the use of its brand in the market, and by damage to ADT's goodwill and reputation as a reliable provider of security systems.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

78.     ADT is entitled to an award of compensatory damages, as well as each Defendant's profits, attorney fees, and the costs of this action pursuant to 15 U.S.C. § 1117(a). The court, pursuant the discretion confided to it under this section of the Act, should also consider enhancing these damages to compensate ADT fully for its losses.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

### <u>COUNT II - COMMON LAW UNFAIR COMPETITION</u>
**(All Defendants)**

79.     ADT incorporates paragraphs 1 through 69 as if set forth fully herein.

**Safe Home Security Inc. Answer:** Defendant repeats, realleges and incorporates by reference each and every response to the allegations contained in Paragraphs 1 through 78 as if fully set forth herein.

**Security Systems Inc. Answer:** Defendant repeats, realleges and incorporates by reference each and every response to the allegations contained in Paragraphs 1 through 78 as if fully set forth herein.

80.     ADT and each of the Defendants compete for a common pool of customers. Each of the parties in this lawsuit market security, automation, and smart-home services to the same target market of residential customers.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations.

**Security Systems Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations.

81.     Each Defendant has engaged in unfair and deceptive misconduct by fielding a staff of sales agents who prey on unsuspecting and sometimes elderly and infirm customers and who make false sales pitches to ADT's customers that are designed to mislead them into believing that they are acting on ADT's behalf, when in fact they represent a competitor freeriding ADT's goodwill to interfere with ADT's contracts with its customers, and to sell and install new alarm systems.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

82.     The Defendants actions are contrary to honest practice in industrial or

commercial matters. They are prohibited by the alarm industry's own code of conduct. They are

independently actionable, *inter alia*, as tortious interferences with ADT's contractual

relationships, and as violations of the Lanham Act.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

83.     Each Defendant's actions are likely to cause confusion among consumers, and in

fact already have caused confusion, not only in the initial stages of their agents' sales pitches,

but also at the point of sale.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

84.     Each Defendant's actions are also contrary to law because they prey upon

elderly and infirm customers who are easy targets for their agents' false sales pitches.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

85.     ADT has been injured as a result of each of the Defendant's actions.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.


**COUNT III - TRADE SLANDER/COMMERCIAL DISPARAGEMENT**
**(All Defendants)**

86.     ADT incorporates paragraphs 1 through 69 as if set forth fully herein.

**Safe Home Security Inc. Answer:** Defendant repeats, realleges and incorporates by reference each and every response to the allegations contained in Paragraphs 1 through 85 as if fully set forth herein.

**Security Systems Inc. Answer:** Defendant repeats, realleges and incorporates by reference each and every response to the allegations contained in Paragraphs 1 through 85 as if fully set forth herein.

87.     Each Defendant, through its respective sales agents, has intentionally made false and misleading statements about ADT, about ADT's products and services, or about Defendant's affiliation with ADT in their sales pitches to ADT's customers as alleged herein.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

88.     As described above, these statements include, but are not limited to, representations to ADT's customer that the Defendant's respective sales agent works for or with ADT, that the Defendant is ADT's successor-in-interest or has otherwise acquired ADT's customer accounts, that ADT has or will soon go out of business and will no longer service the customer's account, that the ADT equipment installed in the customer's home is no longer of good quality or adequate to provide the services the customer has contracted for and therefore must be replaced or "upgraded," or that ADT's equipment is defective and requires the Defendant's sales agent to perform repairs.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

89.     In every instance, there are no issues with ADT's equipment requiring anyone, let alone the Defendant, to repair, replace, or otherwise "upgrade" the equipment installed in the

customer's home.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations.

**Security Systems Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations.

90.     ADT has neither gone out of business nor is ADT in the process of winding down its business in the areas in which the Defendants have so stated to ADT's customers. Nor has or would ADT affiliate itself with the Defendant or otherwise permit its customer accounts to be acquired by the Defendant given the poor market reputation possessed by each, or in the case of Safe Home, the numerous legal and/or administrative proceedings asserted against it by various state attorneys general.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether ADT has gone out of business or is winding down or whether ADT would sell customer accounts to Defendant.  Defendant denies the remaining allegations.

**Security Systems Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether ADT has gone out of business or is winding down or whether ADT would sell customer accounts to Defendant.  Defendant denies the remaining allegations.

91.     Each of the Defendants' false and misleading statements demean the quality of ADT's goods and services.

**Safe Home Security Inc. Answer:** Defendant denies that false or misleading statements were made and denies that false or misleading statements were knowingly made.

**Security Systems Inc. Answer:** Defendant denies that false or misleading statements were made and denies that false or misleading statements were knowingly made.

92.     At the time the statements were made, the Defendant knew the statements to be false.

**Safe Home Security Inc. Answer:** Defendant denies that false or misleading statements were made and denies that false or misleading statements were knowingly made.

**Security Systems Inc. Answer:** Defendant denies that false or misleading statements were made and denies that false or misleading statements were knowingly made.

93.     The statements are defamatory *per se* in that the statements suggest conduct incompatible with the lawful exercise of business, including that ADT has gone out of business, ADT is in the process of winding down its business interests, the equipment installed by ADT in its customers accounts requires an upgrade to provide the services contracted for, or ADT would affiliate itself with entities such as Safe Home that are better known for government investigations into their deceptive sales practices than the services they sell.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

94.     The statements are injurious and damage ADT in its industry and marketplace by causing ADT to lose sales, profits, and good will, and to suffer injury to its reputation.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

95.     Furthermore, ADT has suffered out-of-pocket expenses including but not limited to the costs of ADT equipment taken by the Defendants when they remove such equipment from ADT customer homes and install their own; the costs incurred with replacing such equipment if and when the customers return to ADT; the costs incurred having to send

ADT's technicians to customers homes to remove the Defendants' equipment and reinstall

ADT components; and the need for ADT to train and maintain customer service agents and

provide targeted advertising and customer notification to specifically address these issues

caused by the Defendants' deceptive trade practices described herein.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

96.       Furthermore, the Defendants' slanderous statements have required ADT to

incur attorneys' fees in order to end Defendants' conduct.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

### COUNT IV - TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS (All Defendants)

97.       ADT incorporates paragraphs 1 through 69 as if set forth fully herein.

**Safe Home Security Inc. Answer:** Defendant repeats, realleges and incorporates by reference

each and every response to the allegations contained in Paragraphs 1 through 96 as if fully set

forth herein.

**Security Systems Inc. Answer:** Defendant repeats, realleges and incorporates by reference each

and every response to the allegations contained in Paragraphs 1 through 96 as if fully set forth

herein.

98.       ADT maintains valid and enforceable contracts and business relationships with

its  customers.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to

form a belief as to the truth of the allegations.

**Security Systems Inc. Answer:** Defendant denies knowledge or information sufficient to form a

belief as to the truth of the allegations.

99.     Typically, ADT customers display an ADT sign or window sticker outside their homes to deter potential burglars and broadcast to the outside world that the home is protected by ADT's alarm system.

**Safe Home Security Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations.

**Security Systems Inc. Answer:** Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations.

100.     Each Defendant is knowledgeable of the contractual and business relationship between ADT and its customers. When the Defendant's sales agents visit the homes of these individuals, they become (or are already) aware of such relationship and contract by, among other means: the sign displayed in front of the customer's home, talking with the customer, observing the ADT equipment in the customer's home, or through prior research and intelligence conducted on the customer's address regarding existing alarm systems.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

101.     Despite knowledge of the customer's contractual and business relationship with ADT, the Defendant's sales representatives intentionally and without valid justification interfere with such relationship and procure the breach of the ADT contract upon the promise that the Defendant will "buy out" the remaining term by paying to the customer an amount equal to the remaining obligation on their ADT contract.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

102.    ADT is damaged by the Defendants' unlawful conduct by losing revenue streams that otherwise would remain with ADT absent the Defendant's "buy out" offer, and also because the customer does not always remit any remaining amounts due and owing to ADT that the Defendant provides to its deceptively obtained customer.

**Safe Home Security Inc. Answer:** Denied.

**Security Systems Inc. Answer:** Denied.

## JURY DEMAND

Defendants demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

SSI and SHS deny that Plaintiffs are entitled to any of the relief requested in the Prayer for relief.

WHEREFORE, the Defendants pray:

a.    That the relief sought be denied;

b.    That this action be dismissed; and

c.    That the Defendants be awarded such relief as the Court deems just and proper.

## Affirmative Defenses

By stating the defenses set forth below, Defendants do not agree or concede that they bear the burden of proof or persuasion.

1. The Complaint fails to state a cause of action upon which relief can be granted.

2. Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

3. Plaintiff's claims are barred by the statute of limitations.

4. Plaintiff has unclean hands because, *inter alia*, it has engaged in unfair competition and

has engaged in the acts it is accusing Defendants of engaging in.  Plaintiff also has unclean

hands given the conduct it engaged in as set forth more fully in the Counterclaim section

below.

5.  Plaintiff's claims are barred, in whole or in part, by its failure to mitigate damages.

6.  Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

7.  This court lacks personal jurisdiction over the answering defendants.

8.  This court lacks subject matter jurisdiction.

9.  Plaintiff lacks standing to assert the claims set forth in Complaint

10. Plaintiff has failed to join necessary parties.

11. Plaintiff's claims are barred by estoppel.

12. Defendant Safe Home is not a successor in interest to Alliance Security, Inc. and refers to
    the applicable Asset Purchase Agreement and related documents and refers to the
    Bankruptcy proceedings and Orders of the Bankruptcy Court.

13. Defendants reserve the right to assert additional defenses upon completion of discovery
    and investigation in this case.

14. Defendants assert any defenses contained within the statutes asserted in the Complaint as
    if fully stated herein.

## **COUNTERCLAIMS**

1.      Counterclaim-Plaintiff Safe Home Security, Inc. ("SHS") is a corporation formed

under the laws of the State of Connecticut, with its principal place of business in Connecticut. At

all relevant times, SHS has been in the business of selling, servicing and monitoring residential

and commercial security alarm systems throughout the United States since approximately 1988,

when it was incorporated.

2.      Counterclaim-Plaintiff Security Systems, Inc. d/b/a Safeguard America ("SSI") is

a Connecticut corporation with its principal place of business in Connecticut 06457. Security Systems, Inc. was incorporated in 1992.[1]

3.      Plaintiffs are in the business of marketing, installing, and monitoring electronic security systems throughout the United States.

4.      Plaintiffs are recognized leaders in the home security market.

5.      Customers who enter into contracts with Plaintiffs pay monthly monitoring fees to Plaintiff for ongoing alarm monitoring services.

6.      Plaintiffs have expended and continue to expend substantial time, money, and resources into acquiring customers, providing ongoing services to customers, and maintaining relationships and good will with their customers.

7.      Counterclaim-Defendant the ADT Security Corporation, is a Delaware corporation with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431. The ADT Security Corporation is ultimately wholly owned by ADT Inc., a Delaware corporation whose common stock is traded on the New York Stock Exchange.

8.      Counterclaim-Defendant ADT LLC is a Delaware limited liability company with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431. ADT LLC is an operating company that conducts the ADT alarm services business in the United States. ADT LLC uses the ADT Trademarks under license from The ADT Security Corporation. ADT LLC is owned by The ADT Security Corporation.

9.      Counterclaim-Defendants are referred to collectively as "ADT."

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

---

[1] For the purposes of these counterclaims, both Counterclaim-Plaintiffs are referred to collectively as "Plaintiffs."

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## DEFENDANTS' MISCONDUCT

12.     ADT's sales agents engage in "cold" door-to-door sales wherein they mislead SHS's and SSI's customers into believing the ADT sales agent is affiliated with Plaintiffs, works for Plaintiffs, was sent on behalf of Plaintiffs, or is otherwise authorized to represent Plaintiffs.

13.     Despite knowing the falsity of their statements, ADT's sales agents use their deceptive and misleading sales pitches to persuade Plaintiffs' customers to believe they have an existing relationship with the ADT sales agent.

14.     Having deceived Plaintiffs' customers into trusting them, the ADT sales agents persuade the customers to sign contracts with ADT for ADT equipment and monitoring services by misleading them to believe: that the ADT agreement is an extension of their SHS contract; that ADT had assumed the customer's SHS or SSI account; or that Plaintiffs had assigned the customer account to ADT.

15.     In other instances, the ADT sales agents instead disparage Plaintiffs' products and services by falsely representing to Plaintiffs' customers that she had no choice but to sign a contract with ADT if she wanted a functioning alarm service; that SHS no longer serviced their residential area; that SHS had gone out of business; that SHS had assigned their account to Defendants; or that SHS could not adequately monitor their alarm.

16.     Such representations are false.

17.     After successfully convincing unsuspecting SHS and SSI customers to sign an agreement with ADT, customers are subject to the legitimately-obtained SHS or SSI contract and the illegitimately-obtained ADT contract, causing them to terminate Plaintiffs' service due to ADT's demands for exorbitant contract termination payments.

43

18.   After receiving these customer reports, SHS became concerned that it was and continues to be the victim of systematic poaching by Defendants.

19.   Ultimately, SHS learned that ADT had fraudulently taken over dozens of SHS customer accounts in multiple states.

20.   Ultimately, SSI learned that ADT had fraudulently taken over dozens of SSI customer accounts in at multiple states.

21.   Plaintiffs documented many of these instances, which reflected that Defendants had fraudulently taken over a multitude of Plaintiff's customer accounts and that Defendants' conduct was widespread and part of a pattern and practice over many months and across the country.  Some of these reports are documented below.  Plaintiffs reasonably believe that these instances are merely the "tip of the iceberg" and that discovery will uncover that Defendants targeted many more of Plaintiffs' customers.

22.   Below are several typical reports Plaintiffs have received from its customers about Defendant's deceptive and improper sales practices.

23.   H. Manandic was an SHS customer residing in Sacramento, CA.  On or about August 29, 2017, an ADT sales agent approached Manandic, claiming to be a representative with Safe Home Security.  That ADT sales agent misled Manandic into apparently signing an ADT agreement after falsely stating that SHS was switching its clients over to ADT because of issues with cell towers in the area.  The ADT sales agent's representations were in fact false.

24.   In another instance, on or about September 1, 2020, ADT agent Teddy Nazario approached SHS customer A. Diaz in Bayamon, Puerto Rico and falsely represented that his SHS contract was no longer valid because Nazario had moved from SHS to ADT.

25.   In fact, the Diaz's contract with SHS was still valid and in effect.

26.   In another instance, on or August 20, 2020, ADT agent Teddy Nazario

approached SHS customer S. Bou, whom he knew to have a contract with SHS and deceived her into believing she needed to sign a new contract with SHS.  Ms. Bou has reported that ADT's Nazario made Ms. Bou sign this new contract, which was in fact a contract with ADT, resulting in Ms. Bou being charged for two contracts—once, legitimately by SHS and again, illegitimately, by ADT as a result of its agent's misconduct.

27.     On or about February 12, 2020, SSI customer C. Suarez was approached by an ADT sales agent who persuaded Mr. Suarez to sign a contract with ADT under false pretenses and then removed all of the SSI equipment from his residence without his permission.  Mr. Suarez did not realize he had signed a contract with ADT until after the installation was complete.  As Mr. Suarez wanted to stay with SSI, SSI incurred the expense of installing new equipment for Mr. Suarez.  At the time the ADT contract was signed, Mr. Suarez's contract with SSI was valid and in effect.

28.     SSI Customer N. Ramos-Rodriguez of Rincon, Puerto Rico was approached by an ADT sales agent on or about August 19, 2019, misrepresenting that he was affiliated with SSI in order to persuade Ms. Ramos-Rodriguez to sign a contract.  In reality, that contract was for service with ADT, which Ms. Ramos-Rodriguez did not learn until afterwards.

29.     ADT and its agents also regularly attempt to improperly obtain the early termination of SHS and SSI's customer accounts, as well, thereby unjustifiably interfering with their existing contracts.

30.     For example, on or about August 31, 2020, ADT agent Teddy Nazario called W. del Valle, a customer he knew to have a contract with SHS, and told her she was required to cancel her contract with SHS and sign up with ADT.  Ms. del Valle's contract with SHS was valid and in effect at the time.

31.     In another instance, on or about September 20, 2020 ADT agent Teddy Nazario called N. Torres, a customer he knew to have a contract with SHS, and told her she was required to cancel her contract with SHS and sign up with ADT.  Ms. Torres' contract with was valid and in effect at the time.

32.     In early February 2017, an ADT sales agent came to the house of M. Brown, an SSI customer located in Perris, CA.  That sales agent improperly and through deception obtained the termination of Brown's SSI contract, destroying the installed SSI equipment in the process. After realizing he had been duped and had been switched over to ADT, Brown sought to return to SSI.  As a result, SSI incurred the expense of replacing Brown's improperly destroyed SSI equipment and the labor for installing that equipment.

33.     SSI Customer S. Meyers of New Providence, NJ was repeatedly contacted by an ADT sales agent using aggressive sales tactics and attempting to convince Ms. Meyers to break her contract with SSI early and sign up with ADT.  This ADT sales agent finally wore down Ms. Meyers into agreeing to sign up for ADT despite her valid contract with SSI on or about March 16, 2021.  Ms. Meyers' contract with SSI was in effect and otherwise valid.

34.     SSI Customer R. Baraso of Leesburg, Fl was approached on or about November 27, 2018 by an ADT sales agent.  That ADT sales agent improperly and through deception obtained the termination of Mr. Baraso's otherwise valid contract with SSI, resulting in SSI losing the Baraso customer account.

35.     As a direct result of Defendants' unlawful conduct and interference with Plaintiffs' contracts with its customers, Plaintiff's investment in acquiring these accounts was diminished.

36.     Also, as a direct result of Defendants' misconduct, Plaintiffs have lost current and future revenue from the cancelled monitoring contracts

37.     Plaintiffs have incurred damages by virtue of having to send technicians to the residence of deceived consumers to re-install SHS's equipment after being improperly removed or deactivated by an ADT sales agent.

<u>Injury to SSI's and SHS's Goodwill and Reputation</u>

38.     In addition, SHS and SSI suffered injury and harm to their reputation and they have incurred costs associated with its extensive efforts to mitigate against such injury and harm.

39.     Indeed, every time ADT and its agents falsely affiliate with SHS and/or SSI, that inaccurate association with ADT harms SHS and SSI's reputations for providing safe and reliable home alarm monitoring services.

40.     By falsely affiliating with SHS and SSI, ADT and its agents are incorrectly associating SHS and SSI with ADT's multiple scandals, including the recent revelation that an ADT employee manipulated the accounts and monitoring equipment of over 200 customers in order to spy on them while they engaged in sexual intercourse, were nude, or otherwise believed they were in private.[2]

41.     Indeed, by falsely affiliating with SHS and SSI, ADT and its employees damage their reputation by associating them with the 9,600 illegal instances of home camera monitoring "to view [customer] footage for sexual gratification."[3]

## ADT'S PATTERN OF CRIMINAL CONDUCT

42.     In or about 2019, ADT and SHS began to negotiate a transaction whereby ADT would purchase from SHS a large block of SHS customer accounts.

43. Such transactions between competitors are common within the Home Security System market, with a relatively standardized pricing model based on recurring monthly revenue for each

---

[2] U.S. ATTORNEY FOR THE NORTHERN DISTRICT OF TEXAS, "ADT Technician Pleads Guilty to Hacking Home Security Footage," https://www.justice.gov/usao-ndtx/pr/adt-technician-pleads-guilty-hacking-home-security-footage (Jan. 21, 2021).

[3] *Id.*

account expected based on the terms of the contracts being sold.

44.  As the parties' negotiations continued into 2020, they were unable to reach an agreement on the pricing for the block of contracts to be sold from SHS to ADT.

45.  Apparently determined to seize the initiative in their negotiations, on February 28, 2020 ADT sent David Roman correspondence accusing SSI and SHS of false and deceptive sales tactics.

46.  That correspondence from ADT demanded that SHS and its affiliates pay ADT $9,500,000.00 within seven days "in full settlement of the damages that Safe Home's conduct has caused ADT."

47.  That correspondence continued to threaten litigation against SHS unless it complied with ADT's demands for SHS and its affiliates to immediately pay ADT $9.5 million.

48.  The February 28, 2020 correspondence further threatened to saddle SHS with litigation expenses in excess of $2 million.

49.  Given the parties' ongoing negotiations, sending a "cease and desist" threatening legal action and ruinous legal expenses unless SHS paid ADT $9.5 million and reformed its sales practices to reflect ADT's preferences constituted a violation of Fla. Stat. § 836.05, which prohibits any person from using a printed communication to "maliciously threaten[] injury" to the property of another "with intent to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will. . . ."

50.  Notably, prior to February 28, 2020, ADT's negotiating position with respect to the purchase price for the block of SHS customers was not discounted to reflect what ADT viewed as the value of its alleged claims against SHS.

51.  Thereafter, ADT consistently invoked the threat of bringing financially ruinous litigation against SHS in the parties' negotiations to attempt to compel SHS and its officers to sell the subject block of customer accounts at a price substantially below what would be expected in a standard sale of customer accounts in the industry.

52. The February 28, 2020 correspondence from ADT was not, however, the only time ADT extorted SHS.

53. On June 16, 2020, Kenneth J. Porpora, the Chief Growth Officer of ADT, sent an extortionate email to SHS's representatives in the parties' negotiations.

54. That email made the following threat: "I will be instructing my team today that if we don't have an LOI that both sides are happy with by Wed, 6/24, to pull the ripcord, focus full time on other opportunities, **and turn the legal machine fully back on.**"  (emphasis added).

55. This communication violated Fla. Stat. § 836.05 by maliciously threatening to injure the property of another with the intent to extort money or gain any pecuniary advantage whatsoever and/or to do any act or refrain from doing any act against his or her will.

56. Specifically, by threatening to bring potentially ruinous litigation against SHS unless the parties reached a transaction price acceptable to ADT, ADT was threatening to harm SHS and its shareholders' property by attempting to compel SHS to sell the customer accounts for substantially less than their fair market value or face expensive and burdensome litigation.

57. ADT's repeated threats of potentially ruinous litigation unless SHS sold ADT a block of customer accounts at a price that would financially hurt SHS constituted at least two distinct criminal acts in violation of Fla. Stat. § 836.05.

## COUNT I - UNFAIR COMPETITION IN VIOLATION
## OF THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)(A) [FALSE AFFILIATION]
### (ALL ADT DEFENDANTS)

58. Plaintiffs incorporates paragraphs 1 through 57 as if set forth fully herein.

59. Safe Home Security owns the common-law trademark rights for "Safe Home Security." SHS is injured by any effort by each respective Defendant to confuse SHS's customers as to the affiliations of that Defendant's sales agents with SHS.

60. Security Systems, Inc. owns the common-law trademark rights for "Security Systems, Inc." SSI is injured by any effort by each respective Defendant to confuse SSI's customers as to the

affiliations of that Defendant's sales agents with SSI.

61.   Defendant's sales agents use false representations of affiliation with SHS or SSI to confuse Plaintiffs' customers as to the agents' true affiliation, to interest the customers in their pitches, to win the customers' trust, and to gain access to their homes.

62.   In fact, Defendant's sales agents do not represent SHS or SSI, nor are any of the Defendants affiliated in any manner with Plaintiffs.

63.   Defendant's sales agents make these false representations to Plaintiffs' customers with the intent of deceiving ADT's customers as to a relationship or affiliation with Plaintiffs that does not exist, and that has never existed.

64.   These false and misleading statements are likely to confuse consumers regarding the Defendant's apparent (but false) affiliation with SHS and/or SSI.

65.   SHS and SSI are damaged by the association with ADT that results from ADT freeriding on their respective customer relationships and brand recognition.

66.   Plaintiffs have been and will continue to be damaged as a result of each Defendant's false representations by the confusion of the market for Plaintiffs' goods and services, by the disruption of Plaintiffs' relationships with their customers, by the diversion of Plaintiffs' customers to the Defendant, by Plaintiffs' loss of control of the use of its brand in the market, and by damage to Plaintiffs' goodwill and reputation as a reliable provider of security systems.

67.   SHS and SSI are entitled to an award of compensatory damages, as well as each Defendant's profits, attorney fees, and the costs of this action pursuant to 15 U.S.C. § 1117(a). The court, pursuant the discretion confided to it under this section of the Act, should also consider enhancing these damages to compensate SHS and SSI fully for their losses.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in its favor and against each of the Defendant's, and award the following relief:

a.   Compensatory damages, in an amount to be established at trial, but believed to be in excess of $10 Million;

b.      An accounting of Defendant's profits resulting from its deceptive practices, and payment of such profits to SHS and SSI;

c.      Attorneys' fees and costs incurred in the prosecution of this action, as provided by 15 U.S.C. § 1117(a); and

d.      Such other and further relief as the Court may deem appropriate in the circumstances.

## <u>COUNT II – COMMON LAW UNFAIR COMPETITION</u>
### (ALL ADT DEFENDANTS)

68.   Plaintiffs incorporates paragraphs 1 through 57 as if set forth fully herein.

69.   Plaintiffs and ADT compete for a common pool of customers in the market for security systems.

70.   ADT has engaged in unfair and deceptive conduct by deploying a team of its authorized and exclusive agents that make false sales pitches to Plaintiffs' customers designed to mislead them into believing the agent is acting on behalf of or at the direction of Plaintiffs when in fact they represent a competitor interfering with SHS's and SSI's contracts with their customers and to attempting to replace SHS or SSI with its own alarm systems.

71.   ADT's actions are contrary to honest practice in commercial matters and prohibited by the alarm industry's code of conduct.

72.   ADT's actions are independently actionable as tortious interference with SHS's and SSI's contractual relationships and/or Lanham Act violations.

73.   Each ADT's agent's actions are likely to and have already caused confusion among consumers during and after the fraudulent or deceptive transaction is consummated.

74.   Plaintiffs have been injured as a result of ADT and its agents' actions.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against each of the Defendant's, and award the following relief:

    a.      Compensatory damages, in an amount to be established at trial, but believed to be in excess of $10 Million;

    b.      An accounting of each Defendant's profits resulting from its deceptive practices, and payment of such profits to SHS and SSI;

    c.      Punitive damages in a sum sufficient to deter ADT from engaging in further deceptive sales practices;

    d.      Attorneys' fees and costs incurred in the prosecution of this action; and

    e.      Such other and further relief as the Court may deem appropriate in the circumstances.

**COUNT III - TORTIOUS INTERFERENCE**
**WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS**
**(ALL ADT DEFENDANTS)**

75.  Plaintiffs incorporate paragraphs 1 through 57 as if set forth fully herein.

76.  Plaintiffs maintains valid and enforceable contracts and business relationships with their respective customers.

77.  SHS and SSI customers display a sign outside their homes to deter potential burglars and broadcast to the outside world that the home is protected by SHS's or SSI's alarm system.

78.  ADT and its agents are knowledgeable of the contractual and business relationship between SHS and its customers. When the Defendant's sales agents visit the homes of these individuals, they become (or are already) aware of such relationship and contract by, among other means: the sign displayed in front of the customer's home, talking with the customer, observing Plaintiffs' equipment in the customer's home, or through prior research and intelligence conducted on the customer's address regarding existing alarm systems.

79.  Despite knowledge of the customer's contractual and business relationship with SHS or SSI, the Defendant's sales agents intentionally and without valid justification interfere with such relationship and procure the breach of the customer's SHS or SSI contract.

80.  Plaintiffs are damaged by the Defendant's unlawful conduct by losing revenue streams that

otherwise would remain with Plaintiffs absent the Defendant's interference with their valid contractual relationships.

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in its favor and against each of the Defendants, and award the following relief:

a.   Compensatory damages, in an amount to be established at trial;

b.   Punitive damages in a sum sufficient to deter each Defendant from engaging in further deceptive sales tactics;

c.   Attorneys' fees and costs incurred in the prosecution of this action; and

d.   Such other and further relief as the Court may deem appropriate in the circumstances.

## COUNT IV – CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT
### (ALL ADT DEFENDANTS)

81.   SHS incorporates paragraphs 1 through 57 as if fully set forth below.

82.   In two distinct instances separated in time, ADT extorted SHS and its officers within the meaning of Fla. Stat. § 836.05.

83.   Specifically, ADT sent a "cease and desist" threatening legal action and ruinous legal expenses unless SHS paid ADT $9.5 million and reformed its sales practices to reflect ADT's preferences.

84.   The February 28, 2020 correspondence constituted a violation of Fla. Stat. § 836.05, which prohibits any person from using a written communication to "maliciously threaten[] injury" to the property of another "with intent to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will. . . ."

85.   Specifically, ADT's threat of ruinous litigation absent compliance with its demands constituted an attempt to extort money in the form of its demand for $9.5 million or to harm the SHS's property interest in the customer accounts it was demanding SHS sell it at a substantial discount.

86.   Employing a similar tactic months later, ADT once again extorted SHS by sending on June 16, 2020 a written communication threatening to "turn the legal machine fully back on," i.e. initiate potentially ruinous litigation against SHS and its officers unless SHS sold ADT a block of 35,000 customer accounts at a price substantially below their fair market value.

87.   The June 16, 2020 email constituted a violation of Fla. Stat. § 836.05, which prohibits any person from using a written communication to "maliciously threaten[] injury" to the property of another "with intent to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will. . . ."

88.   Specifically, ADT maliciously threatened injury to SHS's legal and financial interests by way of potentially ruinous litigation with the intent to gain a pecuniary advantage in the parties' negotiations over the price of the SHS customer accounts ADT sought to purchase.

89.   This conduct, among other acts, constituted a "pattern of criminal activity" in violation of Fla. Stat. § 772.103(4) by constituting an "endeavor to violate any of the provisions" of the statute, namely Fla. Stat. § 772.103(3), which prohibits any person from participate in an extortion enterprise through a pattern of criminal activity.

90.   This ongoing pattern of criminal conduct constitutes a continuing threat of illegal conduct persisting into the future as ADT has indicated its intent to continue litigating against SHS until it has acceded to all of ADT's demands.

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in its favor and against each of the Defendants, and award the following relief:

a.      Actual damages, in an amount to be established at trial;

b.      Statutory damages;

c.      Attorneys' fees and costs incurred in the prosecution of this action; and

d.      Such other and further relief as the Court may deem appropriate in the circumstances.

Dated: May 21, 2021                  Respectfully submitted,

                                     */s/ Joshua H. Eggnatz*
                                     Joshua H. Eggnatz, Esq.
                                     Fla. Bar No.: 0067926
                                     Michael J. Pascucci, Esq.
                                     Fla. Bar No.: 0083397
                                     **EGGNATZ | PASCUCCI**
                                     7450 Griffin Rd, Ste. 230
                                     Davie, FL 33314
                                     Tel: (954) 889-3359
                                     Fax: (954) 889-5913
                                     JEggnatz@JusticeEarned.com
                                     Mpascucci@JusticeEarned.com


                                     Joseph Lipari, Esq. (*Pro Hac Vice*)
                                     **THE SULTZER LAW GROUP, P.C.**
                                     270 Madison Avenue, Suite 1800
                                     New York, NY 10016
                                     Telephone: (854) 705-9460
                                     Liparij@thesultzerlawgroup.com

                                     *Attorneys for Plaintiff and Third-Party
                                     Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on **May 21, 2021,** I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                        By:    /s/ Joshua H. Eggnatz
                               Joshua H. Eggnatz
                               Fla. Bar. No.: 0067926

## SERVICE LIST

**SHOOK, HARDY & BACON L.L.P.**
Jennifer A. McLoone
Florida Bar No. 029234

jmcloone@shb.com
Eric S. Boos
Florida Bar No. 0107673
eboos@shb.com
201 S. Biscayne Blvd., #3200
Miami, Florida 33131
Tel: (305) 358-5171
Fax: (305) 358-7470

Charles C. Eblen (*pro hac vice*)
ceblen@shb.com
2555 Grand Blvd.
Kansas City, Missouri 64108
Tel: (816) 474-6550
Fax: (816) 421-5547

Eric J. Hobbs (*pro hac vice*)
ehobbs@shb.com
1660 17th Street, Suite 450
Denver, Colorado 80202
Tel: (303) 285-5300
Fax: (303) 285-5301

*Counsel for Plaintiffs ADT LLC and The ADT Security Corporation*